WHITON, The T. F. See Case No. 13,849.

---

## Case No. 17,598.

### In re WHITTAKER.

[4 N. B. R. 160 (Quarto, 41).] [1]

District Court, D. North Carolina. 1870.

NOTE—STATE CURRENCY—REBELLION—BANKRUPTCY.

Proof of a note payable "in current money of the state" in which it is made, is, if not otherwise open to objection, allowable; and even though the state in which the note is made payable should at the maturity of the note be in rebellion, and it be claimed that such a demand should not be proved in bankruptcy as payable in lawful currency of the United States, but in the state treasury notes of the state in which the note was made, the objection cannot be sus-

[1] [Reprinted by permission.]

tained, and the owner of the note will be entitled to have his debt estimated at its face, with interest, in lawful money.

In bankruptcy.

BROOKS, District Judge. The opinion of this court is required upon a certificate of Mr. Register Shaffer, filed under the provisions of the 6th section of the bankrupt law [14 Stat. 518]. The certificate of the register sets forth that Joseph B. Batchelor, the assignee of Whittaker, acting in behalf of the general creditors of the bankrupt, objects to the allowance, at its nominal value, of a note proved and filed by H. O. Parker, as the present owner of the debt, against the estate of the bankrupt. The following is a copy of the obligation proved and filed: "Three years after date, with interest from date, we or either of us, promise to pay to H. B. Whittaker, two thousand dollars, current money of the state, for value received. Witness our hands and seals this 18th March, 1861. Thos. G. Whittaker. S. M. Williams. Alfred Williams. [Seals.]"

It is contended by the counsel for the assignee that this obligation should be regarded as of the value of two thousand dollars in state treasury notes, at the time the same became due, to wit: March 18, 1864, and that only such value is now due, together with interest from the former date to the present time. The counsel for the creditor (Mr. Parker), on the other hand, contends that this obligation is solvable only in good and lawful currency of the United States. That such is the true and legal import and meaning of the words "current money of the state." This leads us to the inquiry whether North Carolina treasury notes, such as were from time to time issued and put in circulation during the Rebellion, was "current money of the state," within the legal import and meaning of that term.

After a full consideration of the question, I am of the opinion that they were not, and indeed could not be, current money of any state for the payment of debts, while the express prohibition remains in the constitution of the United States against the emission of bills of credit by the state. It may be conceded that the expression "current money of the state," is sufficient to show that it was intended by the parties to this contract that it should be paid with a medium or money other than gold or silver coin, but this would not justify the conclusion that unlawful money should be received at any value, in discharge of the obligation. To say nothing of the unlawful purpose with which all the issues or emissions of North Carolina treasury notes were made, no act could be more clearly in violation of the 10th section of the constitution than all the different issues of treasury notes were, whether made under the provisions of ordinances of the convention or acts of the leg-

islature. That which the supreme law declares shall not be made, surely cannot be authorized by any inferior or subordinate power, not only to be made, but so emitted as to answer the important uses of current money. I would not be understood as declaring that an obligation promising to pay any given amount in North Carolina treasury notes was void (if a medium answering that description was in circulation at the date of the contract); however clearly such medium or money might have been created in violation of the constitution or in hostility to the federal government, unless it should appear that the contract upon which obligation was based, was in some way conducive to the violation of the law, for the contrary has been decided by the circuit courts, and more recently by the supreme court of the United States in the case of Thorington v. Smith, 8 Wall. [75 U. S.] 1. In that case the contract between the parties was held to be for the payment or delivery of a stated sum in confederate treasury notes. And the court say, that in the absence of proof that the contract between the parties was made with the view and intent to further the Rebellion by giving circulation to the money, or in some other way aiding in hostilities against the government, on such a contract the value of the confederate money at the time of payment, if it had any, might be recovered: upon the principle that the confederate money, while it had a value in the markets, when not used in any contract in aid of the Rebellion, was as any other commodity; and a party might, if he saw proper, accept an obligation from another to pay or deliver it.

Then we must inquire what medium was contemplated by the parties to this contract, as receivable in discharge of it at the end of three years from March 18, 1861. Surely North Carolina treasury notes were not contemplated; for to attribute to the payers in the note such foresight, would be giving to him the character of a prophet. That though no such medium or money as North Carolina treasury notes existed, yet such would be issued if the constitution should be so altered as to permit it, and if not, that they would be made in violation of it; and yet such a construction would deny to him the forecast to see that after the notes would be issued, they would also become almost wholly worthless, and this before the maturity of his note! North Carolina treasury notes surely were not contemplated by the parties to this contract at the time the same was made. Then what was contemplated as receivable and payable in discharge of the note?

Chief Justice Chase, in delivering the opinion of the court in Thorington v. Smith [supra], says: "It is quite clear that a contract to pay dollars, made between the citizens of any state of the Union while maintaining its constitutional relations with the national government, is a contract to pay lawful money of the United States, and cannot be modified or explained by parol evidence." North Carolina had, in no legal sense, defied the authority of the United States until after March 18, 1861. The same eminent judge, in a case recently before him in the circuit court of Virginia, declared that a contract for payment in current money of Virginia, was not solvable in Virginia bank notes, after they had fallen in value to a greater per centum than eleven per cent. compared with any legal tender medium. Is it not more reasonable to suppose that all the parties contemplated payment in some lawful money of the United States, or other medium of equal or very nearly equal value, in some medium which the law would regard as current at maturity? This is the conclusion to which I have arrived from the language employed in expressing the contract, and from all attendant circumstances.

It is admitted that the proof of debt is regular. That H. O. Parker is the bona fide owner by indorsement of the debt, and I have assumed that all the parties were residents of North Carolina at the date of the contract. If it were otherwise, however, it would not be more favorable to the assignee. In the distribution of the assets of this estate, the creditor, H. O. Parker, is entitled to have his debt estimated at two thousand dollars, with interest from the 18th of March, 1861, in lawful money.

Let this be certified to A. W. Shaffer, register.